## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Brite Financial Services, LLC,
Gerald D. Grays, and Dale L. Riley,

                    Plaintiffs,

v.

Bobby's Towing Service, LLC,
Robert L. Hardison, Denise Boyce-
Hardison, City of Detroit, and John
Does 1-20,

                    Defendants.

_____/

Case No. 17-13516

Judith E. Levy
United States District Judge

Mag. Judge Mona K. Majzoub

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS [64] AND GRANTING IN PART DEFENDANT BOBBY'S TOWING'S MOTION FOR SUMMARY JUDGMENT [60, 61]

This case is about towing laws. Plaintiffs Brite Financial Services, LLC, Gerald Grays, and Dale Riley, individually and as putative class representatives, sue Defendants Bobby's Towing, LLC, owners Robert Hardison and Denise Boyce-Hardison, the City of Detroit, and John Does

1

1-20[1] (collectively, "Defendants"). (ECF No. 52.) In their Third Amended Complaint, Plaintiffs seek declaratory and injunctive relief and damages. (*Id.* at PageID.787.) Plaintiffs move for partial judgment on the pleadings. (ECF No. 64.)

At various times, Plaintiffs each had a vehicle towed at the direction of the Detroit Police Department. Plaintiffs do not challenge the validity of these initial tows; instead, Plaintiffs seek a declaration that sections of Michigan's towing laws are facially unconstitutional under the Fourth Amendment, Fifth Amendment Takings Clause, and Fourteenth Amendment Due Process clause. (*Id.* at 1076-1077.) Plaintiffs also request injunctive relief prohibiting Defendants from enforcing the unconstitutional provisions. (*Id.*) Defendant City of Detroit responds that the laws are facially constitutional (ECF No. 68), and Defendants Bobby's Towing, Robert Hardison, and Denise Boyce-Hardison (collectively "Bobby's Towing") concur in the response (ECF No. 72).

Additionally, Bobby's Towing filed a motion for partial summary judgment that it is not a "state actor" and cannot be held liable for the

---

[1] John Does 1-20 represent Detroit's "other to be identified" towing company agents (ECF No. 52, PageID.789).

alleged constitutional violations. (ECF Nos. 60, 61.) The Court heard oral argument on both motions on February 11, 2020.

For the reasons that follow, the Court will **grant in part and deny in part** Plaintiffs' motion for judgment on the pleadings. The Court will **grant in part** Defendant Bobby's Towing's motion for summary judgment.

## I. Background

### A. Michigan Towing Laws

Michigan's towing laws specify procedures by which Detroit police, towing companies, and vehicle owners must abide. Each of Plaintiffs' vehicles were towed pursuant to Mich. Comp. Laws § 257.252d, which is summarized as follows:

> 1. A police agency or a governmental agency designated by the police agency may immediately remove a vehicle from public or private property to a place of safekeeping at the expense of the last-titled owner if, among other reasons listed in the statute, the vehicle is obstructing traffic, constitutes an immediate hazard to the public, is parked in a posted tow away zone, is hampering use of private property, or if there is reason to believe the vehicle was stolen.

> 2. If the owner or other person who is legally entitled to possess a vehicle to be towed arrives at the location where the vehicle is located before the actual towing of the vehicle, the

vehicle must be disconnected from the tow truck, and the owner or rightful possessor may take possession of the vehicle and remove it from the tow truck upon the payment of the reasonable service fee.

3. A police agency that authorizes the removal of a vehicle under this subsection must:

    a. Check to determine if the vehicle has been reported stolen prior to authorizing the removal of the vehicle.

    b. With certain exceptions that do not apply here, enter the vehicle into the law enforcement information ("LEIN") network as abandoned not less than 7 days after authorizing the removal and follow the procedures set forth in section 252a.

Mich. Comp. Laws § 257.252a additionally requires the following:

4. Within seven days after the vehicle has been reported to LIEN, the Secretary of State must send the last titled owner a notice that the vehicle is considered abandoned (known as an "ABAN") and enter the vehicle information on a public website that is used for locating towed vehicles.

5. Once notice has been received, a vehicle owner has twenty days to visit the custodian and pay the towing and storage fees or request a hearing from the state court to dispute the fees.

6. If a vehicle owner (or a person holding a security interest in the vehicle) wants to dispute the seizure of the vehicle and/or the reasonableness of towing fees, they must first post a bond

of $40.00 plus the accrued towing and storage fees before being granted a hearing before a state court judge.

7. After posting bond, the state court will schedule a hearing within thirty days.

8. If the state court determines that the vehicle was improperly deemed abandoned, or that the storage and towing fees are unreasonable, the law enforcement agency will reimburse the owner for the towing, storage, and abandonment fees. However, if the state court deems the fees were reasonable and the car was abandoned, the court will use the bond to pay the accrued towing and storage fees.

9. A vehicle owner is not entitled to recovery of the vehicle before the hearing without first paying the accrued towing and storage fees or posting bond in the same amount.

Finally, Mich. Comp. Laws § 257.252e specifies jurisdiction and available remedies:

10. State district courts and municipal courts have jurisdiction to determine if a police agency or towing company properly reported and processed a towed vehicle. Jurisdiction is limited to the court specified in the abandoned vehicle notice.

11. Michigan towing laws provide the exclusive remedies for petitioner's challenging the disposition of abandoned vehicles.

## B.    Plaintiffs

### 1.  Brite Financial

Brite Financial ("Brite"), a company that secures leased vehicles, leased a Chevrolet Malibu to two customers in 2017. (ECF No. 75, PageID.1330.) A Detroit police officer pulled over one of the customers as they were driving the Malibu. (*Id.*) When the customer could not produce proof of insurance, the police officer contacted Bobby's Towing and requested that it tow the vehicle. (*Id.* at 1331.) Bobby's Towing's towed the vehicle to its lot on June 19, 2017. (*Id.*)

Brite, as the lessor of the vehicle and its titled owner, tried to retrieve the vehicle shortly after it was towed. (*Id.* at 1332.) A representative of Bobby's Towing told Brite that because Brite was a lienholder, it could not retrieve the vehicle until 21 days after receipt of a Notice of Abandonment ("ABAN"). (*Id.*)

On September 9, 2017, four months after the car was towed, the Secretary of State issued an ABAN notice. (*Id.* at PageID.1332.) Brite then filed an abandoned vehicle petition in the 36th District Court to dispute the towing and storage fees. (*Id.*) Brite posted a bond of $1,740.00 storage fee plus the $40.00 bond fee in order to obtain a hearing, as required by Mich. Comp. Laws § 257.252a. (ECF No. 72-2.)

The state court held a hearing on the petition on October 13, 2017. (ECF No. 75, PageID.1336.) Denise Boyce-Hardison, one owner of Bobby's Towing, testified about her understanding of the towing laws. (*Id.* at 1337.) Boyce-Hardison said a representative of the Detroit Police Department informed her that Bobby's Towing could not release the vehicle to a lienholder (Brite) until 21 days after issuance of an ABAN. (ECF No. 61-3, PageID.952.) The court found that this was not a correct statement of the law and resulted in Brite's vehicle being held for longer than necessary, significantly increasing storage fees. (ECF No. 61-4.) At the conclusion of the hearing, the district court relieved Brite of the obligation to pay any towing and storage fees. (*Id.*)

## 2. Gerald Grays

Gerald Grays' vehicle was towed by Bobby's Towing at the direction of a Detroit police officer on January 5, 2016. (ECF No. 75, PageID.1338.) Defendants did not provide Grays with a notice of the impound until more than two years later, when a Detroit police officer told Grays that his vehicle was at Bobby's Towing. (ECF No. 52, PageID.791.) Grays contacted Bobby's Towing, who, according to Grays, initially demanded $11,000 in storage fees to retrieve vehicle. (*Id.*) Grays was unwilling to

7

pay that amount and did not retrieve the vehicle at that time. (ECF No. 76-8.)

On March 10, 2018, Grays received an ABAN notice. ECF No. 75-4, PageID.1367.) On April 2, 2018, Grays filed an abandoned vehicle petition in the 36th District Court. (*Id.*) In order to obtain a hearing date, Grays was required to pay $815.00 to Bobby's towing and $115.00 to the court. (*Id.*) His state court case is stayed pending the outcome of this case. (*Id.*)

### 3. Dale Riley

Dale Riley discovered his vehicle was missing and reported it as stolen to the Detroit Police Department in October 2015. (ECF No. 52, PageID.793.) Two years later, Riley received a call from the Department and was told that his vehicle was located at the Detroit Police Department impound lot. (*Id.*) (Bobby's Towing did not tow Riley's vehicle, so Riley brings claims against only the Detroit Police Department and the individual officers.)

Riley received an ABAN in October 2017. (ECF No. 52, PageID.793.) When he went to the police impound lot, the Department demanded $855.00 to retrieve the vehicle. (*Id.*) Because he was told that

the vehicle would be sold if he did not pay the fees, Riley paid the full amount and retrieved the vehicle. (*Id.*)

Riley then filed a petition with the district court to challenge the fees. (*Id.*) The court held a hearing on May 24, 2018. (*Id.*) The court found Riley had been overcharged by $460.00 and ordered the Department return that amount to him. (*Id.* at PageID.794.) Riley alleges that the Department has yet to do so. (*Id.*)

## II. Legal Standard

Plaintiffs filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. Proc. 12(d). Prior to Plaintiffs' motion, Defendant Bobby's Towing filed a Motion for Summary Judgment. (ECF Nos. 60, 61). Defendant Bobby's Towing attached to its motion numerous exhibits consisting of matters outside the pleadings. (*Id.*) Similarly, Plaintiffs attached to their response numerous exhibits consisting of matters outside the pleading. (ECF No. 75, 76.) The two motions involve overlapping legal and factual issues, and the Court heard oral argument

9

on both motions at its February 11 hearing. Accordingly, pursuant to Federal Rule of Civil Procedure 12(d), the Court reconstrues Plaintiffs' motion as a motion for summary judgment.

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

### III.  Legal Analysis

Plaintiffs mount a facial challenge to the constitutionality of the towing laws. Specifically, Plaintiffs seek declaratory and injunctive relief that the notice and hearing provisions of Michigan's towing laws, Mich. Comp. Laws §§ 257.252(a), (d), are facially unconstitutional. To prevail on a facial challenge, a party must show that there is no set of

circumstances where the statute would be constitutional. *Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502, 514 (1990).

## A. Standing

Plaintiffs have standing to seek declaratory and injunctive relief. All courts have an "independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)). Challenges to a court's subject matter jurisdiction "may be raised at any time, by any party or even *sua sponte* by the court itself." *Franzel v. Kerr Mfg. Co.*, 959 F.2d 628, 630 (6th Cir. 1992). "If Plaintiffs cannot establish constitutional standing, their claims must be dismissed for lack of subject matter jurisdiction." *Loren v. Blue Cross & Blue Shield*, 505 F.3d 598, 607 (6th Cir. 2007).

Allegations of past injury do not generate standing to bring an action seeking declaratory or injunctive relief; a plaintiff must show "actual present harm or a significant possibility of future harm." *Fieger v. Ferry*, 471 F.3d 637. 643 (6th Cir. 2006) (internal citations omitted). Alleged future harm must be "certainly impending." *Clapper v. Amnesty*

*Intern.*, 568 U.S. 398, 401 (2013). As the Supreme Court has articulated, "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

When considering whether a litigant has Article III standing, a court must assume the merits of that litigant's legal claims. *See City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003); *see also Warth v. Seldin*, 422 U.S. 490, 501–02 (1975). Plaintiffs are still owners or lienholders of vehicles subject to Michigan's towing laws. Therefore, assuming the validity of Plaintiffs' Fourth, Fifth, and Fourteenth Amendment claim, Plaintiffs remain under the threat of future injury— that Defendants will again tow and unconstitutionally hold Plaintiffs' vehicles. Additionally, Plaintiffs allege damages resulting from unlawful storage fees and may seek declaratory relief on that basis. Plaintiffs thus have standing to pursue declaratory and injunctive relief, and the Court will proceed to the merits of Plaintiffs' motion.

## B. The Fourth Amendment

Plaintiffs do not challenge the initial tow of their vehicles. Instead, they challenge Defendants' continued possession of their vehicles as authorized by statute. Plaintiffs argue that the "indefinite, non-contestable, and warrantless holding of vehicles" is contrary to the Fourth Amendment. (ECF No. 64, PageID.1111.) Because the holding of Plaintiffs' vehicles does not constitute a seizure under Sixth Circuit precedent, Michigan's towing laws do not, on their face, violate the Fourth Amendment.

Property is "seized" within the meaning of the Fourth Amendment when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook Cty.*, 506 U.S. 56, 61 (1992). Accordingly, "seizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place." *Id.* at 68.

The Sixth Circuit has held that a city's continued possession of property does not constitute a seizure under the Fourth Amendment. In *Fox v. Van Oosterum*, the court found no Fourth Amendment violation where a plaintiff challenged not the initial seizure of his driver's license, but the police officer's subsequent refusal to return it. 176 F.3d 342, 349-

53 (6th Cir.1999). The court held, "The refusal to return the license here neither brought about an additional seizure nor changed the character of the [prior] seizure from a reasonable one to an unreasonable one because the seizure was already complete when the defendants refused to return the license." *Id*. at 350. The court explained, "[T]he Fourth Amendment protects an individual's interest in retaining possession of property but not the interest in regaining possession of property. Once that act of taking the property is complete, the seizure has ended and the Fourth Amendment no longer applies." *Id*. at 351. *See also Langston v. Charter Twp. of Redford*, 623 F. App'x 749, 760 (6th Cir. 2015) (holding the same).

Plaintiffs cite to the Ninth Circuit case *Brewster v. Beck* for the proposition that an unreasonable delay in the return of seized property implicates the Fourth Amendment. 859 F.3d 1194, 1197 (9th Cir. 2017). Although the Circuits are split on whether a "seizure" includes a continuing course of conduct that interferes with possessory interests, the Sixth Circuit's holding in *Fox* and *Langston* that a seizure is limited to the initial dispossession of property is binding. Accordingly, Plaintiffs cannot state a claim for continued seizure under the Fourth Amendment.

14

The Court is prepared to grant summary judgment to Defendants with respect to Plaintiffs' Fourth Amendment claim seeking declaratory and injunctive relief. Plaintiffs may file a memorandum, of no more than fifteen pages and no later than June 4, 2020 setting forth any new arguments as to why Defendant is not entitled to such relief. Defendant may file a responsive memorandum of no more than fifteen pages by June 11, 2020. *See* Fed. R. Civ. Pro. 56(f)(1).

### C.  The Fifth Amendment

Plaintiffs challenge Defendants' prolonged possession of their vehicles and the statute's remedy limitations as contrary to the Fifth Amendment Takings Clause. (ECF No. 64, PageID.1113). Plaintiffs ask the Court "to strike down MCL 257.252e(2) and (4)" so that Plaintiffs may seek relief outside of the state court and petition for just compensation for the taking of their vehicles. (*Id.*) Because the taking of Plaintiffs' vehicles was not for public use, the Court declines to grant Plaintiffs' motion for judgment on the pleadings on Fifth Amendment grounds.

### 1. Public Use

The Fifth Amendment Takings Clause provides that no "private property [shall] be taken for public use, without just compensation." U.S.

Const. amend. V. Towing a vehicle constitutes a taking. *See Ark. Game and Fish Comm'n v. United States,* 568 U.S. 23, 26, (2012) ("[I]f government action would qualify as a taking when permanently continued, temporary actions of the same character may also qualify as a taking."). However, the towing of Plaintiffs' vehicles was not for public use.

While the public use requirement is construed broadly, *see Kelo v. City of New London,* 545 U.S. 469, 483 (2005), that broad construction, does not extend the scope of the Fifth Amendment to the towing and storage of vehicles pursuant to Michigan's towing laws. The Supreme Court has held that "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." *Bennis v. Michigan,* 516 U.S. 442, 452 (1996). Courts applying *Bennis* have found that the towing and subsequent storage of vehicles does not constitute a public use. *See Tate v. Dist. of Columbia,* 627 F.3d 904, 909 (D.C.Cir.2010) (the impoundment and sale of plaintiff's vehicle did not "constitute a taking for public use for which she was entitled to compensation under the Fifth Amendment's Taking Clause."); *Olivier v.*

16

*Hicks*, No. 17--01300, 2018 WL 2729252, at \*6 (M.D. Tenn. May 14, 2018) ("[City] did not take [plaintiff's] property pursuant to the power of eminent domain, but merely towed and stored the vehicles . . . [t]he vehicles were neither taken for public use nor for the purpose of transferring them to [private parties]. It is therefore apparent that [plaintiff] cannot sustain a [Fifth Amendment] claim."); *Mateos-Sandoval v. Cty. of Sonoma*, 942 F. Supp. 2d 890, 911 (N.D. Cal. 2013).

Plaintiffs concede the validity of the initial tow of their vehicles, but they argue the impounding and holding of their vehicles constituted a "public use" because some of the proceeds from the towing fees go to government actors. (ECF No. 64, PageID.1114.) Additionally, they claim that the impounding of a car "for investigation or safekeeping also constitutes a taking for a public use or purpose." (ECF No. 64, PageID.1114.) However, Plaintiffs cite to no authority distinguishing this case from *Bennis* or *Tate*. The Court finds that Defendants' towing and storing of Plaintiffs' vehicles was a lawful acquisition of property by means other than the invocation of eminent domain. Therefore, Plaintiffs cannot sustain a Fifth Amendment Takings Clause claim against any Defendant. Their motion is denied with respect to this claim.

## 2. Exclusive Remedy

In their reply brief, Plaintiffs acknowledge that they "do not challenge the state's right to delegate jurisdiction to certain courts." (ECF No. 74, PageID.1319.) Instead, Plaintiffs challenge Mich. Comp. Laws § 252.257(e)'s exclusive remedies clause, which limits the remedies for challenges to the disposition of an abandoned vehicle to those provided by Michigan's towing laws. Plaintiffs argue that to the extent this provision limits a person's ability to receive just compensation under a Fifth Amendment Takings Clause claim, the statute is unconstitutional. (*Id.*)

Because the Court has found that Plaintiffs' Fifth Amendment claim lacks merit, it need not reach the issue of whether Mich. Comp. Laws § 252.257e's exclusive remedy provision precludes a court from awarding just compensation in cases involving a Takings Clause violation. However, the Court notes that any such preclusion would raise a "serious constitutional question." *See Webster v. Doe*, 486 U.S. 592, 604 (1988) (noting "serious constitutional question . . . would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim").

18

As with Plaintiffs' Fourth Amendment claim, the Court is prepared to grant summary judgment to Defendants with respect to Plaintiffs' Fifth Amendment claim seeking declaratory and injunctive relief. Plaintiff may present new arguments as to why Defendants are not so entitled in the same memorandum due no later than June 4, 2020. *See* Fed. R. Civ. Pro. 56(f)(1). Defendant may respond in their responsive memorandum of no more than fifteen pages by June 11, 2020.

### D. Fourteenth Amendment Due Process Challenge

Finally, Plaintiffs argue they have been deprived of due process because the towing laws unconstitutionally restrict their access to the court. (ECF No. 64, PageID.1103, 1108.)

To establish a procedural due process claim, Plaintiffs must show that they were deprived of a constitutionally "protected [property] interest within the meaning of the Due Process clause, and that the state did not afford adequate procedural rights before depriving [them] of [their] protected interest." *Henry v. City of Middletown*, 655 Fed. App'x. 451, 462 (6th Cir. 2016).

In *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), the Court set forth three factors that determine whether an individual has received adequate due process:

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* at 333.

### 1. Time of Hearing

Specifically, Plaintiffs take issue that a vehicle owner must wait for an ABAN from the Michigan Secretary of State before scheduling a hearing, which must be set within 30 days. (*Id.*) According to Plaintiffs, this timeline is not prompt enough to satisfy constitutional muster. (*Id.* at PageID.1109.)

Plaintiffs have a significant property interest in their vehicle: a person's ability to make a living and access the necessities and amenities of life depends upon the use of their vehicle. *See Henry v. City of Middletown, Ohio*, 655 F. App'x 451, 462 (6th Cir. 2016).

20

Whether Michigan's towing laws violate Plaintiffs due process rights by depriving them of their property interest in their vehicle turns on whether the laws provide a means for Plaintiffs to regain possession of their vehicles pending a hearing. In *City of Los Angeles v. David*, the Supreme Court held that a city's twenty-seven-day delay in holding a hearing for a person to recover the money spent on retrieving a towed vehicle did not violate that person's due process rights. 538 U.S. 715, 719 (2003). The Court, applying *Mathews*, found that the private interest was small, consisting of "the individual's interest in maintaining the use of money between (a) the time of paying the impoundment and towing fees and (b) the time of the hearing. *Id.* at 717. The Court noted that "a 30-day delay in presenting evidence is unlikely to spawn significant factual errors." *Id.* Finally, the Court held that "[the nature of the city's interest in delay is one of administrative necessity." *Id.* at 718. Finding all three *Mathews'* factors to weigh in favor of a finding of no constitutional violation, the Court concluded that "the 27-day delay in holding a hearing . . . reflect[ed] no more than a routine delay substantially required by administrative needs" and did not violate due process. *Id.* at 719.

21

By contrast, multiple Circuit Courts have held that where a statute does not give a plaintiff the means to repossess their vehicle pending a hearing, the statute violates due process. In *Stypmann v. San Francisco*, the Ninth Circuit found that a California statute that did not include a provision by which vehicle owners could regain possession of their vehicles prior to paying accrued towing and storage fees was unconstitutional. 557 F.2d 1338 (9th Cir. 1977). The statute included an indigency provision, through which an owner claiming indigency could receive a hearing on the fees within five days. *Id.* at 1341. However, with no means for even an indigent owner to regain their vehicle prior to the hearing, the court found that "[a] five-day delay in justifying detention of a private vehicle is too long." *Id.* at 1344. Similarly, in *Coleman v. Watt*, the Eighth Circuit held that "a city can provide a less-than-prompt hearing, but only if the owner is permitted to regain the use of the impounded vehicle in the interim." 40 F.3d 255, 261 (8th Cir. 1994). The court suggested that a seven-day delay in providing a hearing, absent a provision enabling the return of a vehicle prior to the hearing, would be unconstitutional. *Id. See also Lee v. Thornton*, 538 F.2d 27, 33 (2d Cir. 1976) (holding that forfeiture proceeding required a probable cause

hearing within 72 hours because "deprivation to the individual is often serious, involving as it does possible stranding without transportation").

Unlike the statutory provisions in *Stypmann*, *Coleman*, and *Lee*, Michigan's towing laws provide a means for individuals repossess their vehicles prior to a hearing. Specifically,

> [a]n owner who requests a hearing may obtain release of the vehicle by posting a towing and storage bond in an amount equal to the $40.00 plus the accrued towing and storage fees with the court. The owner of a vehicle who requests a hearing may obtain release of the vehicle by paying a fee of $40.00 to the court and the accrued towing and storage fees instead of posting the towing and storage bond.

Mich. Comp. Laws § 252.257(a)(6). The bond provision allows a plaintiff to regain possession of their vehicle prior to a hearing without prepaying the towing and storage fees. Accordingly, the timing of the statutory hearing does not violate due process. *See Breath v. Cronvich*, 729 F.2d 1006, 1011 (5th Cir. 1984) (holding that a bond procedure prior to a merits hearing satisfied procedural due process). The Court is prepared to grant summary judgment to Defendants with respect to Plaintiffs' Fourteenth Amendment claim as it pertains to the timing of an abandonment petition hearing. Plaintiffs may, in their fifteen-page memorandum due no later than June 4, 2020, set forth any new

arguments as to why Defendants are not entitled to such relief. Defendants may address the issue in their memorandum of no more than fifteen pages due June 11, 2020. *See* Fed. R. Civ. Pro. 56(f)(1).

## 2. Entry into LEIN

However, the Court holds that Mich. Comp. Laws § 257.252d does not survive constitutional scrutiny with respect to when the Detroit Police must enter a vehicle into LEIN. The law states that "[a] police agency shall enter the vehicle into the law enforcement information network as abandoned *not less than 7 days* after authorizing the removal and follow the procedures set forth in section 252a." Mich. Comp. Laws § 257.252d(3)(b) (emphasis added). Unlike Mich. Comp. Laws § 257.252a, where police must enter the vehicle into LEIN within twenty-four hours, the police are required to *wait* 7 days before entering the information into LEIN. This means a vehicle owner will go without notice of the tow for a minimum of seven days. Without notice of the tow, the owner has no means of retrieving the vehicle. Accordingly, the private interest at stake—use of a vehicle—is much higher than that at stake pending a hearing on the merits—a purely monetary interest. Expediting the LEIN entry will reduce the risk of erroneous deprivation by enabling

24

individuals to repossess their vehicles sooner. And the government's interest is low; § 257.252a's twenty-four-hour requirement demonstrates that police agencies do not need a full seven days to enter a vehicle into LEIN. Weighing the *Mathews*' factors, the Court finds Mich. Comp. Laws § 257.252d(3)(b) unconstitutional. Plaintiffs' motion for declaratory judgment is granted in part with respect to this claim. Defendants are enjoined from enforcing Mich. Comp. Laws § 257.252d(3)(b). Consistent with Mich. Comp. Laws § 257.252a(4)(b), police must enter vehicle information into LEIN no more than twenty-four hours after authorizing a vehicle's removal.

### 3.  Pre-Payment Requirement

Plaintiffs also claim the requirement that an owner must pay the fees or post a bond before they are entitled to a hearing deprives them of due process. Mich. Comp. Laws Ann. § 257.252a reads, "The owner may contest the fact that the vehicle is considered abandoned or the reasonableness of the towing fees and daily storage fees by requesting a hearing and posting a bond equal to $40.00 plus the amount of the accrued towing and storage fees." Plaintiffs argue the "non-waivable" prepayment requirement "denies vehicle owners reasonable access to

court to challenge the impound of their property. Simply put: no prepayment, no hearing." (ECF No. 64, PageID.1097.)

The *Mathews v. Eldridge* framework applies. 424 U.S. 319 (1976). As was the case in *City of Los Angeles v. David*, the private interest affected by the specific government action is the use of money between the time the bond is posted or fees are paid and when the money is returned. 538 U.S. at 719. This interest is not as strong as a person's property interest in their vehicle. *Id*.

Next, the Court must weigh the Plaintiffs' interest in the temporary deprivation of their property against the governmental interest. *Mathews,* at 319. Here, the government has a strong interest in ensuring timely payment of the towing fees, as well as avoiding non-collection of fines and frivolous appeals. *See Fowler v. Benson*, 924 F.3d 247, 262 (6th Cir. 2019) ("The state also has legitimate interests in promoting compliance with court orders and in collecting traffic debt."); *Blackhawk Mining Co. v. Andrus,* 711 F.2d 753, 757 (6th Cir. 1983) (noting "the government's interest in prompt assessment and collection of civil penalties to ensure compliance with the Act is substantial"); *John Walters Coal Co. v. Watt,* 553 F. Supp. 838, 840–41 (E.D. Ky. 1982)

(finding the private interest in avoiding a pre-payment requirement is "simply not sufficient to offset the government's interest in collecting these prepayment penalties") (internal citation omitted)). The government's interest in enforcing the statutory scheme and collecting payment for the towing and storage fees outweighs the Plaintiffs' interest in the temporary deprivation of their money.

The third factor to balance is the risk of an erroneous deprivation of the private property. *Mathews,* at 344. Here, the risk of erroneous deprivation is low. Once the bond is posted or fees paid, petitioners are afforded a hearing in the 36th District Court before a neutral arbiter to determine the reasonableness of the tow and fees, which must be scheduled within thirty days of the request for hearing. If the court determines the owner has been overcharged, the owner receives the fees back in the amount they have been overcharged. Mich. Comp. Laws § 257.252f(3)(c). If the owner did not pay the fees, but posted a bond with the court, the bond is released to the owner. *Id.*

Overall, the *Mathews* test favors a finding that challenged provision does not violate due process. Indeed, courts have consistently found that pre-payment requirements are constitutional so long as there is an

opportunity to post a bond in the same amount. *See Breath v. Cronvich*, 729 F.2d 1006, 1011 (5th Cir. 1984); *Stypmann, supra*, 557 F.2d at 1343; *Hale v. Tyree*, 491 F. Supp. 622, 626 (E.D. Tenn. 1979).

The absence of an indigency exception (or "non-waivable" prepayment requirement, as Plaintiffs phrase it) poses constitutional concerns. (ECF No. 64, PageID.1097.) If a vehicle owner is indigent and cannot afford to post bond or pay the fees, they are essentially left to forfeit the vehicle to the state, with no way to challenge the fees or get the vehicle back. *See Langston v. Charter Twp. of Redford*, 623 F. App'x 749, 760 (6th Cir. 2015) (finding bond requirement in forfeiture proceedings did not violate due process because there was a waiver for indigency); *In re Forfeiture of 2000 GMC Denali & Contents*, 316 Mich. App. 562 (2016) (finding the forfeiture law unconstitutional because there was no opportunity to waive the bond requirement, and indigent defendant was left to essentially forfeit her property to the state).

Plaintiffs, however, do not have standing to challenge the lack of indigency provision in the towing laws. Plaintiffs have not suffered injury as a result of the lack of indigency provision. None of the Plaintiffs claim indigency, and each Plaintiff was able to post the bond or pay the fees

required to access the state court. The fact that Plaintiffs mount a facial challenge does not evade this hurdle. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352–53 (2006) ("A plaintiff must have standing for each claim it raises."); *Mosby v. Ligon*, 418 F.3d 927, 932–33 (8th Cir. 2005) ("Litigants must satisfy 'normal requirements' of Article III standing even when bringing facial challenges.").

Standing also requires an injury that is likely to be redressed by a favorable judicial decision. *Id.* A favorable judicial decision would not redress Plaintiffs' injury with respect to this claim because Plaintiffs have not alleged that an indigency waiver would apply to them.

Accordingly, Plaintiffs' motion for judgment on the pleadings is denied with respect to the statutory prepayment requirement. The Court is prepared to grant summary judgment to Defendants with respect to Plaintiffs' Fourteenth Amendment claim regarding the prepayment requirement for abandonment petitions. Plaintiffs may, in their fifteen-page memorandum due no later than June 4, 2020, set forth any new arguments as to why Defendants are not entitled to such relief. Defendants may address the issue in their memorandum of no more than fifteen pages due May 6, 2020. *See* Fed. R. Civ. Pro. 56(f)(1).

29

### 3. Challenge to vagueness

Finally, Plaintiffs argue that the statutory provisions regarding prepayment of fees violate due process because they are unconstitutionally vague. Specifically, Plaintiffs write that Michigan's towing laws "(1) do not describe how these fees are to be calculated, (2) do not explain how the state court is supposed to know what prepayment amount must be received from an aggrieved vehicle owner in order to accept his or her petition, and (3) do not provide for judicial oversight over what the prepayment amount should be." (ECF No. 64, PageID.1107.)

The prepayment provisions are not unconstitutionally vague. Mich. Comp. Laws § 252.257(f) describes the abandonment petition process in detail. The Administrative Fee Rules set specific towing rates for private towing services utilized by the Detroit Police Department. (ECF No. 61-8.) Plaintiffs do not allege specific facts showing that either they or the state court did not know the prepayment amount required to file their respective abandonment petitions. Nor do Plaintiffs allege that the prepayment requirement was enforced against them in ways that were either "arbitrary" or "discriminatory." See *Kolender v Lawson*, 461 U.S.

352, 357–358 (1983). Plaintiffs' request for judgment on the pleadings is denied with respect to this claim. The Court is prepared to grant summary judgment to Defendants with respect to Plaintiffs' Fourteenth Amendment vagueness claim. Plaintiffs may, in their fifteen-page memorandum due no later than June 4, 2020, set forth any new arguments as to why Defendants are not entitled to such relief. Defendants may address the issue in their memorandum of no more than fifteen pages due June 11, 2020. *See* Fed. R. Civ. Pro. 56(f)(1).

### D. State Action

Bobby's Towing has filed a motion for partial summary judgment that it is not a state actor and that it did not violate Plaintiffs' constitutional rights. (ECF Nos. 60, 61.) Plaintiffs bring Fourth, Fifth, and Fourteenth Amendment § 1983 claims against Bobby's Towing. (ECF No. 52.) The Court anticipates granting summary judgment to all Defendants with respect to the entirety of Plaintiffs' Fourth and Fifth Amendment claims, and with respect to the majority of Plaintiffs' Fourteenth Amendment claim, excepting the constitutionality of Mich. Comp. Laws § 257.252d(3)(b)'s LEIN entry requirement.

31

Accordingly, the Court will delay adjudication of Defendant Bobby's Towing's motion with respect to the claims for which the Court anticipates granting summary judgment to Defendants. If, after consideration of the parties' memoranda, the Court grants summary judgment to Defendants, it will deny Defendant Bobby's Towing's motion for summary judgment as moot.

The Court grants Defendant Bobby's Towing's motion for summary judgment with respect to Plaintiffs' Fourteenth Amendment claim regarding the constitutionality of Mich. Comp. Laws § 257.252d(3)(b)'s LEIN entry requirement.

A § 1983 claim must satisfy two elements: (1) the deprivation of a right secured by the Constitution or laws of the United States that (2) was caused by a person acting under color of state law. *Tahfs v. Proctor*, 316 F.3d 584 (6th Cir. 2003). A private business does not act under color of state law, and thus is not a "state actor," unless its conduct is "fairly attributable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Therefore, Bobby's Towing is not a state actor unless its conduct is "fairly attributable" to the state.

With respect to the entry of a vehicle into LEIN, Bobby's Towing's conduct is not fairly attributable to the state. Mich. Comp. Laws § 257.252d(3)(b) reads:

> Except for vehicles impounded under subsection (1)(d), (e), or (k), [none of which are applicable to Plaintiffs,] a police agency shall enter the vehicle into the law enforcement information network as abandoned not less than 7 days after authorizing the removal and follow the procedures set forth in section 252a.

As set forth above, this provision is unconstitutional because an owner will go a minimum of seven days without notice of the tow. The action that bears the unconstitutional result—failure to enter the vehicle into LEIN for 7 days— is in the exclusive control of the police department. Bobby's Towing is not responsible for entering the vehicle into LEIN. Indeed, Bobby's Towing does not have access to LEIN.[2]  That Bobby's Towing holds the vehicles is not relevant here, because Plaintiffs do not successfully challenge any provision of Michigan's towing laws relating to the storage of vehicles or the filing of an abandonment petition. Because Bobby's Towing is not involved in the narrow section of the

---

[2] Access LEIN is restricted to criminal justice agencies or those agencies statutorily granted authorization. Michigan State Police, https://www.michigan.gov/msp/0,4643,7-123-3493_72291---,00.html (Last Visited March 3, 2020).

towing laws that the Court has found facially unconstitutional, the analysis stops there. Bobby's Towing is not a state actor for purposes of Plaintiffs' Fourteenth Amendment claim challenging the constitutionality of Mich. Comp. Laws § 257.252d(3)(b), and therefore Defendants' motion for partial summary judgment is granted with respect to that claim.

## IV.  Conclusion

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion for judgment on the pleadings (ECF No. 64). The Court **GRANTS IN PART** Bobby's Towing's motion for partial summary judgment (ECF Nos 60, 61).

The Court gives notice of its intent to **GRANT** partial summary judgment to **Defendants** under Federal Rule of Civil Procedure 56(f)(1). Plaintiffs may file a memorandum, of no more than fifteen pages and no later than June 4, 2020, setting forth any new arguments as to why Defendant is not entitled to such relief. Defendant may file a responsive memorandum of no more than fifteen pages no later than June 11, 2020.

IT IS SO ORDERED.

Dated: May 15, 2020                    s/Judith E. Levy
Ann Arbor, Michigan                    United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 15, 2020.

<u>s/William Barkholz</u>
Case Manager

35